UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
New Haven Division

| | | |
|---|---|---|
| CHRISTOPHER A. AMBROSE, | ) | Case No. 3:25-cv-00398-SVN |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BANDY X. LEE, | ) | |
| | ) | |
| Defendant. | ) | |

FEB 2 2026 PM 2:44
FILED-USDC-CT-HARTFORD

### DEFENDANT BANDY X. LEE'S SUPPLEMENTAL MOTION TO DISMISS WITH PREJUDICE
### (Fed. R. Civ. P. 41(b); 28 U.S.C. § 1915(e)(2)(A))

I, Bandy X. Lee, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

### Introduction

Defendant Bandy X. Lee, proceeding *Pro Se*, respectfully moves for dismissal of this action with prejudice pursuant to Fed. R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(A). Dismissal is warranted because Plaintiff Christopher Ambrose secured in forma pauperis ("IFP") status in bad faith through deliberate fraud on the Court. As detailed below, Mr. Ambrose's IFP application was rife with material falsehoods and omissions regarding his finances and dependents. His misrepresentations strike at the core of the Court's evaluation of indigence, warranting the harsh sanction of dismissal with prejudice.

Mr. Ambrose portrayed himself as destitute to avoid paying the filing fee, yet evidence shows his claim of poverty was patently untrue. For example, his alleged indigence was belied by extravagant living arrangements and undisclosed assets, including: a $3,750/month waterfront home lease, a pending inheritance exceeding $800,000 in probate, ongoing SNAP benefits (food assistance), an active production company generating income, and no financial support obligations for adult children.

1

The Court unsealed Plaintiff's financial affidavit and discovered a "misleading financial narrative" orchestrated by Mr. Ambrose to obtain cost-free access to the courts. Indeed, after filing this case IFP, Mr. Ambrose promptly initiated multiple other federal lawsuits without seeking IFP status – and paid the filing fees in full – underscoring the falsity of his prior poverty claims. Such abuse of the IFP privilege is precisely what § 1915(e)(2)(A) was designed to prevent.

Accordingly, and as further supported by the Declaration of Mia Ambrose and exhibits, the Court should dismiss this action *with prejudice*. The integrity of judicial proceedings demands no less in the face of willful fraud on the court. Mr. Ambrose's bad-faith conduct – falsifying his indigency to dodge fees – forfeits his privilege to proceed in forma pauperis. The Court should also exercise its discretion to sanction this misconduct by referring Mr. Ambrose for investigation of federal offenses committed in the course of this litigation, and by awarding Defendant her attorney's fees and any further relief deemed proper.

### Factual Background: Plaintiff's Misrepresentations and Omissions

**Plaintiff's IFP Filing:** On March 16, 2025, Plaintiff filed this suit along with a sworn IFP application and financial affidavit. In those filings, he claimed extreme financial hardship: reporting essentially no income, no assets, and minimal expenses, while asserting he supported two 18-year-old "dependent" children in school. Plaintiff even moved to seal his affidavit, but the Court denied sealing, allowing scrutiny of his claims. Upon review, the affidavit revealed a pattern of material falsehoods and omissions calculated to mislead the Court.

**Evidence of Fraud:** The following false statements and concealed facts illustrate Plaintiff's abuse of the IFP process:

- **Underreported Rent:** Plaintiff understated his monthly rent by over $1,200. He swore his rent was $2,450, when in fact he has leased a luxury beachfront home at 153 Middle Beach Rd.,

Madison, CT, for $3,750 per month since September 2024. The rental property is valued at over $2.2 million, and Plaintiff's lease confirms the higher rent. This sizeable expense was concealed to exaggerate his poverty. This and other facts raising serious questions about Plaintiff's dishonesty are detailed in reports by journalist Frank Parlato, Jr. (**Exhibit A**).

- **Falsified Dependent Children:** Plaintiff falsely claimed two 18-year-olds as dependents and full-time students. In reality, neither child was a full-time high school student at the time. Mia Ambrose, Plaintiff's daughter, has not resided with him or received any support from him since August 2024. She is independent, and Plaintiff's continued portrayal of her as a dependent is false. Mia's sworn declaration (**Exhibit B**) confirms that Plaintiff even refused to return her clothing, ID, and personal documents, and misrepresented her residency to authorities to continue receiving benefits and bolster his IFP claim. Plaintiff's son Matthew Ambrose does live with him, but was not enrolled in school – records show Matthew withdrew from high school on March 12, 2025, just four days before Plaintiff falsely swore that both children were full-time students. Plaintiff's dependent children's claims were deliberately misleading.

- **Omitted Public Assistance:** Plaintiff failed to disclose government benefits that undercut his claim of poverty. He has been receiving Supplemental Nutrition Assistance Program (SNAP) benefits continuously since at least late 2024. On information and belief, Plaintiff likely qualified for SNAP by misrepresenting his household size (for instance, by claiming three children at home) – inconsistent with the *actual* household composition and with the inflated grocery expenses he listed in his affidavit. Plaintiff also receives utility assistance from Eversource under a hardship program, which he did not report. These undisclosed benefits further indicate that his affidavit did not fully or honestly portray his resources.

- **Concealed Assets and Income:** Perhaps most egregiously, Plaintiff hid substantial assets and income streams in his sworn affidavit:
    o He failed to report recent withdrawals from a Fidelity 401(k) retirement account, which provided him with cash income.
    o He checked "no" to owning any stocks, yet he holds stock investment accounts (e.g., with Fidelity and Bank of America) and regularly sells stocks for funds. His claim of owning zero stocks was plainly untrue.
    o He never mentioned a large inheritance in progress. In fact, Plaintiff has been actively participating in probate court proceedings for many months regarding an estate from which he stands to inherit hundreds of thousands of dollars (estimated $800,000+). This imminent windfall was knowingly omitted from his IFP disclosures.
    o He concealed business income tied to his company, *Eyes Above Productions, Inc.* Although Plaintiff reported no business or self-employment income, he receives regular royalty/residual checks from the Writers Guild of America West ("WGA West") through this company. Eyes Above Productions (registered in California, ostensibly as a barber/beauty business) serves as Plaintiff's vehicle to collect entertainment industry residuals. Evidence shows Plaintiff receives checks payable to "Eyes Above Productions, Inc. FSO (for the benefit of) Chris Ambrose" at a Beverly Hills address. These WGA residual payments arrive roughly quarterly and constitute real income; yet Plaintiff omitted them entirely from his affidavit. Despite this ongoing business activity and revenue, Plaintiff swore under penalty of perjury that he had "$0.00" income and no business interests – a blatant falsehood.

Each of these assets or income sources was material to Plaintiff's financial picture and should have been disclosed. Their omission violated the sworn disclosure obligations of the IFP affidavit and falsely inflated Plaintiff's portrayal of poverty.

- **Ability to Pay Shown by Subsequent Filings:** Plaintiff's conduct after initiating this suit further exposes his bad faith. After gaining IFP status in this case, Plaintiff filed at least two additional federal lawsuits in 2025 – one against Frank Parlato Jr., and one against Tina Swithin – without seeking IFP in those cases. In each, he paid the full filing fee of approximately $400, evidencing his ability to fund litigation when it suited him. These later filings (documented in Exhibit J) directly contradict Plaintiff's claim that he lacked $402 to pay this Court's fee. In other words, Mr. Ambrose had the financial means to litigate, but he chose to misrepresent his finances to avoid the fee in this particular case, thereby abusing the IFP privilege.

Collectively, the above falsehoods and omissions paint a stark picture: Plaintiff deliberately lied about his finances to obtain a fee waiver. This was not a matter of minor inconsistencies or good-faith error. It was a fraudulent scheme to "weaponize poverty" – to secure subsidized access to the courts while secretly holding significant assets and income. Indeed, Plaintiff went so far as to take steps to perpetuate the fraud, such as holding onto Mia Ambrose's personal documents to falsely claim her as a dependent. Such conduct demonstrates willful bad faith.

In light of these facts, Mr. Ambrose's IFP application was not merely incomplete – it was intentionally deceptive, constituting a fraud on the Court. Plaintiff constructed a false narrative of indigence to gain an unwarranted litigation advantage. The privilege of proceeding IFP was never meant to shelter those who conceal luxury assets or litigation war chests behind a facade of poverty.

Notably, the same deceptive IFP affidavit that Plaintiff submitted in this case has already drawn judicial scrutiny in a related case in this District. In *Ambrose v. Parlato*, No. 3:25-cv-01151-SVN,

Defendant Frank Parlato Jr. moved for sanctions and alerted the Court to Mr. Ambrose's financial misrepresentations. Parlato's filings (including an affidavit with supporting exhibits) corroborate and amplify the evidence of Plaintiff's fraud presented here. For example, Parlato identified Plaintiff's undisclosed income from Eyes Above Productions at the Beverly Hills address and detailed the pattern of false statements in Plaintiff's IFP affidavit. Thus, the Court is already on notice – through the Parlato case – of Mr. Ambrose's bad-faith conduct regarding IFP status. This Supplemental Motion now brings those issues squarely before the Court in *this* case, on behalf of Dr. Lee, and seeks the appropriate remedy: dismissal with prejudice.

### Legal Standard

Congress enacted 28 U.S.C. § 1915 to ensure indigent litigants have access to the courts, but with that privilege comes an expectation of honesty. Under 28 U.S.C. § 1915(e)(2)(A), "the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue." This mandatory dismissal provision exists to prevent abuse of the IFP privilege and deter fraud on the court. In other words, if a plaintiff's claim of indigence is found to be false, the court must terminate the action – even if filing fees were initially waived.

Importantly, courts have made clear that dismissal under § 1915(e)(2)(A) may be ordered with prejudice when the falsification was in bad faith or part of a deliberate effort to mislead. The Second Circuit and other courts hold that material lies in an IFP affidavit warrant the harsh sanction of dismissal with prejudice, because "permission to proceed in forma pauperis is a privilege, not a right". The integrity of the judicial process demands that those who "falsely understate their net worth in order to obtain in forma pauperis status" be weeded out and denied the benefit of proceeding further. In a summary order, the Second Circuit affirmed dismissal where a litigant omitted significant funds from an IFP application, emphasizing that § 1915(e)(2)(A) is meant to weed out litigants who misrepresent

their financial status to gain undue advantage. Even an omission or minor falsification can trigger dismissal; for instance, failure to disclose assets or inflating expenses falls within the statute's scope (the statute is not limited to outright perjury about income).

Apart from § 1915, federal courts possess inherent authority (and under Fed. R. Civ. P. 41(b)) to sanction bad-faith litigation conduct, including fraud on the court. Rule 41(b) authorizes involuntary dismissal with prejudice for failure to comply with court rules or orders, and submitting a false financial affidavit is a prime example of failing to comply with the obligation of candor in court filings. Courts also invoke their inherent powers to protect the judicial process from fraud and bad faith conduct. As the Supreme Court noted, the court's inherent power extends to dealing with fraud that attempts to subvert the integrity of proceedings (citing _Chambers v. NASCO, Inc._, 501 U.S. 32, 44 (1991)). Here, Plaintiff's misuse of IFP status is a willful abuse of the judicial process, which this Court has the power and duty to redress.

## Argument

### I. Bad-Faith IFP Fraud Requires Dismissal with Prejudice

Under 28 U.S.C. § 1915(e)(2)(A), if a court finds that a plaintiff's allegation of poverty was untrue, dismissal is mandatory. The statute says the case "shall" be dismissed as soon as the falsity is discovered. This harsh outcome reflects the policy that fraudulently obtaining IFP status is a serious abuse that warrants immediate termination of the suit. Here, there is no question that Mr. Ambrose's allegation of poverty was false. He misrepresented or concealed virtually every aspect of his financial condition – from income, to assets, to expenses and dependents – in order to appear indigent. The breadth and materiality of these falsehoods take this case well beyond the realm of excusable mistake or misunderstanding. This was a calculated fraud.

Courts have consistently held that when a litigant tells material lies to qualify for IFP status, the case must be dismissed *with prejudice*. Dismissal with prejudice is appropriate because it serves as a deterrent to others who might be tempted to "take advantage of the system through lies or fraud", and it prevents the litigant from benefiting from the deception. For example, in *Mathis v. N.Y. Life Ins. Co.*, 133 F.3d 546, (7th Cir. 1998), the Seventh Circuit affirmed dismissal with prejudice where the plaintiff failed to disclose pension income on her IFP application. In *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, (7th Cir. 2022), the same court flatly stated: "Because [the plaintiff] made false statements in her IFP affidavit, the suit had to be dismissed; § 1915(e)(2)(A) says so." While those are Seventh Circuit cases, the principle is universal – and the Second Circuit has voiced full agreement. In *Vann v. Comm'r of N.Y.C. Dep't of Correction*, 496 F. App'x 113 (2nd Cir. 2012), the Second Circuit upheld dismissal where an inmate omitted significant deposits from his IFP affidavit, noting that the statute's purpose is to prevent abuse by those who misrepresent their financial resources. District courts within this Circuit likewise hold that materially false IFP statements mandate dismissal, especially when made in bad faith (even if the case has merit otherwise).

Mr. Ambrose's misstatements here were indisputably material. The false information pertained to core elements of the Court's IFP determination: monthly housing cost, number of dependents, receipt of public assistance, and available assets. Any one of these, if truthfully disclosed, could have influenced the Court's decision on whether he qualified for a fee waiver. Taken together, these falsehoods painted a wholly distorted picture of Plaintiff's finances. If the Court had known that Mr. Ambrose lived in a costly beachfront property, had substantial investments and an impending inheritance, and no actual dependent children in school, it almost certainly would have denied IFP status. Thus, the misrepresentations were material to the IFP determination.

Moreover, the evidence shows these misrepresentations were made willfully and in bad faith, not by mistake. Plaintiff did not simply forget a minor asset or miscalculate an expense; he engaged in a pattern of deception: undervaluing expenses, overstating obligations, and omitting entire categories of income/resources. He even attempted to keep his affidavit sealed, which suggests he knew that disclosure of his finances would reveal inconsistencies. This conduct mirrors the kind of deliberate deceit that courts have said warrants the harshest sanction. The Second Circuit has observed that to justify dismissal under § 1915(e)(2)(A), the falsehoods should be material and made in bad faith. Here, both criteria are met in spades. Mr. Ambrose's false statements directly influenced the IFP ruling (satisfying materiality) and were strategically calculated to mislead (demonstrating bad faith).

Accordingly, dismissal with prejudice is not only justified – it is necessary to protect the integrity of these proceedings. Mr. Ambrose's abuse of the Court's generosity has already consumed judicial time and resources under false pretenses. To allow him to continue litigating (now as a paying litigant) would reward deception and encourage future abuse of the IFP system. Dismissal with prejudice serves as a stern warning that litigants who "forfeit the privilege" of IFP by lying will not be given a second chance. It also spares Defendant Dr. Lee from expending further resources defending a case founded on fraud. In short, the only appropriate remedy is to terminate this lawsuit permanently.

## II. The Court Should Refer Plaintiff for Investigation of Perjury and Fraud

Plaintiff's conduct in procuring IFP status was not just a civil wrong; it may well amount to criminal violations of federal law. Mr. Ambrose signed his IFP affidavit under penalty of perjury, yet much of its content was knowingly false. Title 18 of the United States Code provides for criminal penalties in such circumstances. In particular:

- **18 U.S.C. § 1621 (Perjury):** makes it a felony to willfully state under oath (or by declaration under penalty of perjury) any material matter which the person does not believe to be true. Mr.

Ambrose's false statements about his income, assets, and dependents, made in a sworn affidavit, fall within the scope of perjury.

- **18 U.S.C. § 1001 (False Statements):** criminalizes knowingly making false statements in any matter within the jurisdiction of the executive, legislative, or judicial branch of the United States. Submitting a false IFP application to a federal court is a false statement in a judicial matter. This statute could apply both to the misrepresentations to this Court and any false information Plaintiff provided to federal agencies (e.g., in obtaining SNAP or other federal benefits).

- **18 U.S.C. § 1343 (Wire Fraud):** prohibits schemes to defraud or obtain money or property by false pretenses via interstate wires. If Plaintiff used email or other interstate communications in furtherance of his fraudulent IFP scheme (for example, electronically filing the false affidavit, or misrepresenting facts in online benefit applications), wire fraud may be implicated. Moreover, the benefit he obtained – a waived $402 filing fee – constitutes "property" or a thing of value obtained by fraud, which courts have recognized can support a wire fraud charge in the context of fraudulent fee waivers.

This Court possesses the authority to refer potential criminal misconduct to the United States Attorney for investigation. Given the clear evidence that Mr. Ambrose lied under oath to a federal court, a referral is warranted here. The deterrent effect of dismissal will be enhanced if accompanied by the possibility of prosecutorial action. At a minimum, a referral would signal that litigants cannot exploit judicial resources through perjury without consequence. Mr. Ambrose is a former attorney, which heightens the seriousness of his actions – he was certainly aware of the illegality of false statements under oath, yet proceeded regardless. The Court should therefore refer this matter to the

U.S. Attorney's Office to evaluate charges for perjury, false statements, and wire fraud arising from Mr. Ambrose's IFP fraud and related misrepresentations.

### III. Attorney's Fees and Any Other Appropriate Relief

Finally, Defendant requests that the Court award attorney's fees and costs incurred as a result of Plaintiff's bad-faith litigation conduct. Courts have inherent power to award fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (see *Chambers v. NASCO*, 501 U.S. at 45-46). Here, Mr. Ambrose's fraud on the court forced Dr. Lee to litigate a motion to dismiss on grounds that should never have arisen. He gained admission to federal court under false pretenses, burdening Defendant and the Court with a case that *should not have been* filed without payment of fees (and arguably might not have been filed at all if he had to pay up front). An award of fees would compensate Defendant for expenses unnecessarily incurred and serve to further deter such misconduct.

Defendant also seeks such other and further relief as the Court deems proper. This may include, for example, an order in the related *Ambrose v. Lee* family court matter (if any) or any other sanction the Court finds just. At minimum, dismissal with prejudice, a criminal referral, and attorney's fees are merited to do justice in response to Plaintiff's egregious behavior.

**WHEREFORE**, Defendant Bandy X. Lee respectfully requests that this Court:

1. Dismiss the Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A) and Fed. R. Civ. P. 41(b), due to Plaintiff's fraud on the Court in obtaining IFP status;

2. Refer Plaintiff Christopher Ambrose to the United States Attorney for the District of Connecticut for investigation of potential violations of 18 U.S.C. § 1621 (perjury), 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 1343 (wire fraud), and any other applicable federal statutes, arising from his conduct in this case and related court filings;

3. **Award Defendant her attorney's fees and costs**, as sanctions for Plaintiff's bad-faith litigation and misrepresentations; and

4. Grant **such other and further relief** as the Court deems just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this
26th day of January, 2026,
in New York, New York.                                        Respectfully submitted,

                                                              _____
                                                              Bandy X. Lee, M.D., M.Div.
                                                              1918 1st Avenue, Apt 516
                                                              New York, NY 10029
                                                              Tel: (917) 328-2492
                                                              Email: bandyleemd@gmail.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing SUPPLEMENTAL MOTION TO DISMISS WITH PREJUDICE has been filed with the CM/ECF system and will be sent via electronic mail to:

Christopher A. Ambrose
153 Middle Beach Rd.
Madison, CT 06443
ca0515@aol.com

Dated: January 26, 2026                                       Respectfully submitted,

                                                              _____
                                                              Bandy X. Lee, M.D., M.Div.