UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
New Haven Division

MAR 6 2026 PM 1:34
FILED-USDC-CT-HARTFORD

| | | |
|---|---|---|
| CHRISTOPHER A. AMBROSE, | ) | Case No. 3:25-cv-00398-SVN |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BANDY X. LEE, | ) | |
| | ) | |
| Defendant. | ) | |

### REPLY DECLARATION OF DEFENDANT BANDY X. LEE, M.D., M.Div.
### (Fed. R. Civ. P. 41(b); 28 U.S.C. § 1915(e)(2)(A))

I, Bandy X. Lee, M.D., M. Div., (also known as BANDY X. LEE by way of the caption), pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

### Identity of Declarant

1. I am the Defendant in the above-captioned action. I submit this reply declaration in further support of my Supplemental Motion to Dismiss With Prejudice and for Sanctions (the "Motion"). I have personal knowledge of the matters stated herein or have learned of them through my review of the record. This declaration is intended to highlight the controlling facts and law warranting dismissal of this case with prejudice and the imposition of severe sanctions in response to Plaintiff's opposition. It is written in compliance with D. Conn. L. Civ. R. 10 and 83.6 (formatted in 12-point font and double-spaced, and sworn under 28 U.S.C. § 1746).

### Plaintiff's Material Misrepresentations to the Court

2. It is beyond genuine dispute that Plaintiff Christopher Ambrose obtained in forma pauperis ("IFP") status in this case by *lying* to the Court about his finances. In his sworn IFP application dated March 16, 2025 (ECF No. 2), Plaintiff attested under penalty of perjury that he was

1

unemployed with no income or significant assets, and that he was supporting two 18-year-old children as dependents. These assertions were materially false. The evidence uncovered – much of it from Plaintiff's own family and records – shows that Plaintiff (a) falsely claimed two dependent children when in fact he had none, (b) concealed substantial income and assets, and (c) inflated or misrepresented his expenses to manufacture a picture of indigence.

### False Dependents

3. Plaintiff has three children. Plaintiff swore that his twin elder children (then age 18) were full-time students living with and dependent on him. In reality, his daughter (Mia Ambrose) had not resided with Plaintiff or received any support from him since August 2024, and his son had formally withdrawn from high school on March 12, 2025 – four days before Plaintiff claimed him as a "full-time" student under his care. Mia Ambrose has provided a sworn declaration confirming that she was not living with Plaintiff as of 2025 and that Plaintiff's claim to be supporting her was untrue. Thus, as of the date of his IFP filing, Plaintiff was dishonest about Mia's status as a minor or student dependent. His representation to the contrary was patently false.

### Concealed Income and Assets

4. Plaintiff grossly understated his financial resources. He reported "$0.00" income and answered "No" to owning any stocks or other valuable assets. In truth, Plaintiff had multiple sources of income and considerable assets that he failed to disclose. For example, records show that Plaintiff operates a personal corporation through which he receives regular residual and royalty payments from prior work as a television writer (via the Writers Guild of America). He maintains bank and brokerage accounts (including a Fidelity investment account and a 401(k) retirement account) and has recently liquidated stocks or made withdrawals yielding spendable

funds. Most strikingly, at the time of his IFP application, Plaintiff was actively participating in probate proceedings for his late parents' estate, from which he is slated to inherit *hundreds of thousands of dollars* (approximately $800,000) – an impending windfall he never mentioned to this Court. These assets and income streams were unquestionably material to his financial condition and *should have been disclosed*. Their omission violated the duty of candor on the IFP affidavit and created a false impression of poverty.

### Inflated Expenses and Misleading Hardship Claims

5. Plaintiff's IFP affidavit listed various living expenses (rent, utilities, groceries, etc.) that were exaggerated or presented out of context to overstate his financial burden. For instance, Plaintiff claimed a monthly grocery expense of $750, yet he failed to inform the Court that he was receiving Supplemental Nutrition Assistance Program (SNAP) benefits at the time, which covered the bulk of his food costs. Likewise, he claimed to be incurring high costs for his children's care while omitting that one child had left his household in 2024. Another was no longer in school, meaning he actually had no ongoing dependent support expenses for those children. Plaintiff also obtained other forms of assistance that offset his claimed expenses – for example, he was receiving a hardship discount on his utility bills and had both of his 18-year-old children (including Mia, who no longer lived with him) enrolled as dependents on his household's Medicaid plan. These subsidies reduced the very expenses he listed on his affidavit, yet Plaintiff did not disclose them. In short, Plaintiff presented the Court with a one-sided and misleading account of his finances: overstating obligations while concealing assets and assistance.

### Ability to Pay (Abuse of IFP Privilege)

6. Plaintiff's subsequent conduct underscores the willfulness of his deception. After securing a fee waiver in this case based on his purported indigence, Plaintiff proceeded to file at least two other federal lawsuits in late 2025 (against different defendants) *without* seeking IFP status – in each instance paying the full filing fee of approximately $402 out of pocket. (Those actions include *Ambrose v. Parlato*, No. 3:25-cv-01151-SVN, and *Ambrose v. Swithin*, No. 3:25-cv-01234-SVN, in this District.) The fact that Plaintiff had the resources to initiate other cases as a paid litigant in the same year he claimed he could not afford the fee here directly refutes his allegation of poverty. It reveals that he *chose* to misrepresent his finances in this case in order to avoid paying the fee, thereby abusing the IFP privilege for strategic advantage. Indeed, Plaintiff's own opposition papers tacitly concede that he ultimately had the means to pay the filing fee (as he offers belatedly to do so now); he simply did not want to pay it at the outset. Such conduct – gaming the system to obtain free litigation, despite having access to funds – is a fraud on the Court.

### Bad Faith and Fraud on the Court

7. The pattern of falsehoods described above was not the result of any inadvertent error or misunderstanding on Plaintiff's part; it was a deliberate scheme to "weaponize poverty" and gain entry to this Court under false pretenses. Plaintiff is a suspended former attorney, well familiar with legal processes, and he knew or certainly should have known that providing truthful and complete information on his IFP application was required. The extensive misrepresentations – covering dependents, income, assets, and expenses – demonstrate a calculated effort to deceive the Court. Notably, Plaintiff even went so far as to retain possession of his daughter Mia's personal documents (such as identification or records) after she left his

home, apparently so that he could continue to *falsely claim her as a dependent* despite her absence. This indicates premeditation. In my view (and as supported by the evidence submitted with the Motion), Plaintiff's IFP affidavit was a "carefully crafted misrepresentation," not a good-faith snapshot of his finances. By lying about matters at the very foundation of the case – his entitlement to proceed without paying fees – Plaintiff perpetrated a fraud on the Court. Courts have long held that when a litigant "lies to the court and his adversary intentionally, repeatedly, and about issues central to the case," he forfeits the right to have his claims adjudicated *on the merits* (such conduct being an affront to the integrity of the judicial process). *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 136, 139–40 (2d Cir. 2023) (A litigant who fabricates evidence or knowingly offers false testimony on issues central to the case forfeits the right to have his claims adjudicated on the merits, as dismissal with prejudice is a proper exercise of the court's inherent authority to protect the integrity of the judicial process).

8. Here, although Plaintiff's lies concerned his financial status rather than the underlying merits of his claim, they are no less central – without the fraudulently obtained IFP status, this case would not have been allowed to proceed in its current form. In equitable terms, Plaintiff comes to this Court with unclean hands, having secured the Court's indulgence (a fee waiver) through deceit. Equity and good conscience do not permit a litigant to benefit from such wrongdoing.

### Controlling Law – Mandatory Dismissal for False IFP Claims

9. Federal law could not be clearer that such misconduct mandates dismissal of the case. Congress has expressly provided in the IFP statute that *"the court shall dismiss the case at any time if the court determines that … the allegation of poverty is untrue."* 28 U.S.C. § 1915(e)(2)(A) (*emphasis added*). This provision was amended in 1996 to make dismissal mandatory, reflecting a firm policy that courts must weed out litigants who misrepresent their finances to

obtain fee waivers. The purpose of § 1915(e)(2)(A) is to protect the judicial system from abuse by those who would "falsely understate their net worth in order to obtain in forma pauperis status." In practical terms, once it is determined that a plaintiff's poverty claim was false, a pure textualist reading of the statute says the case must be dismissed – "the judge has no choice" in the matter. But also see, e.g., Romesburg v. Trickey, 908 F.2d 258, 261–62 (8th Cir. 1990) (joining Third, Sixth, and Eleventh Circuits in holding that dismissal with prejudice is within discretion for a bad-faith false IFP affidavit); Harris v. Cuyler, 664 F.2d 388, 391 (3d Cir. 1981) (affirming dismissal with prejudice under 28 U.S.C. § 1915(d) where inmate misrepresented his assets); Dawson v. Lennon, 797 F.2d 934, 935 (11th Cir. 1986) (per curiam) (same); Vann v. Comm'r of N.Y.C. Dep't of Corr., 496 F. App'x 113, 115 (2d Cir. 2012) (dismissal with prejudice not an abuse of discretion for deliberate concealment of income). Courts have described false IFP filings as "fraud upon the court" that cannot be tolerated, emphasizing that the public's interest in the integrity of judicial proceedings outweighs the plaintiff's interest in pursuing claims tainted by such fraud.

10. To be sure, courts recognize that not every minor inaccuracy in an IFP application will trigger the ultimate sanction. The statute is intended to catch deliberate fraud or material lies, not harmless mistakes. Thus, the central question is whether the applicant's overall allegation of poverty was *untrue in material respects*, evaluated in light of all the information that should have been disclosed. If the truthful picture had shown that the person was not actually indigent enough to qualify, then the "allegation of poverty" is deemed untrue, and dismissal is required. In contrast, if a person is genuinely impoverished, a minor omission or misunderstanding might be forgiven without dismissal.

11. Here, there is no doubt that Plaintiff's true financial state (had it been honestly disclosed) would have disqualified him from IFP status – he had assets and access to funds well above the threshold for indigence. Moreover, as explained, the nature of his omissions and lies indicates bad faith rather than an innocent oversight. Dismissal is therefore *mandatory* under the statute.

12. The Second Circuit has affirmed that § 1915(e)(2)(A) should be applied with an eye to the litigant's intent: dismissal is especially appropriate where a plaintiff has concealed or misrepresented assets in bad faith to gain IFP status. In *Vann v. Commissioner of N.Y.C. Dept. of Correction*, for example, an experienced pro se litigant failed to report over $2,000 of income in his IFP application; the district court dismissed the case with prejudice, finding the omission willful, and the Second Circuit affirmed, agreeing that such "deliberate concealment of income in order to gain access to the court without prepayment of fees" constitutes bad faith and warranted dismissal. *See Vann*, 496 F. App'x at 115. Similarly, other circuits have repeatedly upheld dismissals (often with prejudice) when plaintiffs were found to have lied about their finances to the court. The common theme in these cases is that permitting a lawsuit tainted by such fraud to proceed would undermine the integrity of the judicial process. As the *Vann* court observed, § 1915(e)(2)(A) is intended to ensure that "fee waivers are limited to the truly indigent and not gamed by those with secret assets."

## Dismissal *With Prejudice* is Warranted

13. Plaintiff's opposition argues that, even if there were misstatements in his IFP filing, dismissal "with prejudice" would be too harsh a result – he suggests that at most the Court might revoke IFP status or require payment of the fee, allowing the case to continue. I firmly disagree. Given the egregious and calculated nature of Plaintiff's misconduct, dismissal should be with prejudice, meaning he is not entitled to simply re-file his claims after the fact.

14. The case law supports this outcome where bad faith is present. Indeed, multiple circuits (including the Third, Sixth, Eighth, and Eleventh) have held that courts have discretion to dismiss an entire action **with prejudice** when a plaintiff files a false poverty affidavit in bad faith. Dismissal with prejudice is considered a proper and necessary sanction in such circumstances to prevent the litigant from benefiting from the attempted fraud. If courts were to allow a "do-over" – for example, dismissing without prejudice or permitting the litigant to pay the fee and reinstate the case – it would *incentivize* dishonesty. A litigant could lie to get in the courthouse door and, if caught, face no meaningful consequence beyond paying what was owed in the first place. As one court noted, allowing that would enable fraud "without penalty, thereby encouraging it."

15. The Second Circuit's summary order in *Vann* implicitly approves of dismissal with prejudice in this context: the appellate court in *Vann* did not disturb the lower court's decision to make the dismissal prejudicial to re-filing. And the Eighth Circuit in *Romesburg* explicitly affirmed a with-prejudice dismissal for a prisoner who concealed property, emphasizing that lesser sanctions would not suffice. In short, this is precisely the kind of case in which the ultimate sanction of dismissal with prejudice is warranted, to *"protect the integrity of [the] proceedings"* and to send an unmistakable message that such abuse of the judicial system will not be tolerated.

### Plaintiff's Opposition Fails to Rebut the Evidence of Fraud

16. In his opposition brief, Plaintiff does not genuinely dispute the core facts outlined above. He does not deny, for example, that his daughter was no longer living with him in 2025, or that he has been receiving residual payments through a corporation, or that he paid filing fees in other cases. Instead, Plaintiff offers excuses and justifications: he claims that any errors in his IFP

application were "minor" or made in good faith, that he misunderstood certain questions, or that he was not explicitly warned of the consequences of inaccuracies. I have reviewed these arguments and find them wholly unpersuasive. **No amount of spin can erase the simple truth: Plaintiff lied under oath to gain a benefit in this litigation. The sheer number and significance of his false statements belie any notion of an innocent mistake or misunderstanding.**

17. For instance, it defies credulity to think that Plaintiff somehow *forgot* about an $800,000 inheritance in progress or believed that a corporate account funneling him regular checks did not count as an "asset" or "income." And even if he harbored some subjective confusion on a particular point, that would not excuse the deception. A litigant is not entitled to "substitute his judgment for that of the Court regarding *in forma pauperis* eligibility," nor can he hide behind purported bad advice or personal belief when the court's financial disclosure form clearly calls for full disclosure. In short, Plaintiff's professed lack of intent to deceive is not credible in light of the record evidence.

### Lack of Prior Warning is No Defense

18. Plaintiff also suggests that dismissal with prejudice is improper because he supposedly lacked notice or an opportunity to correct his affidavit before this Motion. This argument is misplaced. Certainly, courts prefer to warn litigants when their conduct approaches a sanctionable line, especially for procedural missteps. But in cases of outright fraud or perjury, an explicit warning is not a prerequisite to dismissal. Some conduct is so clearly beyond the pale that any reasonable person – and *especially* a former attorney like Plaintiff – knows it will have severe consequences. Filing false statements under oath is one such conduct.

9

19. The IFP statute itself effectively provides notice, by stating in no uncertain terms that a case "*shall* be dismissed" if the allegation of poverty is untrue. Plaintiff swore to the truth of his financial affidavit; he needed no additional reminder that dishonesty could cost him his case (and more).

20. Moreover, once I filed the present Motion detailing the misrepresentations, Plaintiff was on notice of the gravity of the issue and had a full opportunity in his opposition to **come clean** or at least attempt to explain the discrepancies. He has failed to offer any convincing innocent explanation or to genuinely rectify the falsehoods. Therefore, the lack of an earlier court-issued warning does not shield him. As the Second Circuit has observed, a warning is not invariably required where the misconduct is egregious, and the litigant's background or the obviousness of the wrong indicates he "knew or should have known" the risk he was taking. Plaintiff – a law school graduate and former member of the bar – cannot plausibly claim ignorance of the fact that lying to a federal court is sanctionable.

### Appropriateness of Additional Sanctions (Referral and Fees)

21. In addition to dismissal with prejudice, the circumstances merit further sanctions to fully address Plaintiff's bad-faith conduct. My Motion specifically requested that the Court consider referring this matter to the United States Attorney's Office for investigation of possible perjury (18 U.S.C. § 1621), false statements (18 U.S.C. § 1001), and wire fraud (18 U.S.C. § 1343). I reiterate that request here.

### The evidence of perjury is strong.

22. Plaintiff's IFP application was a sworn affidavit, and as documented above, it contained multiple lies about material aspects of his income, assets, and dependents. These were not accidental typos or ambiguous answers – they were outright falsehoods going to the heart of

his eligibility for IFP status. Such conduct falls well within the realm of criminal perjury, and making false statements to a federal court may independently violate 18 U.S.C. § 1001. Furthermore, the manner in which Plaintiff executed this scheme – by filing the false affidavit electronically to procure a monetary benefit (the waived fee) – arguably implicates the federal wire fraud statute as well. While it is of course for the Department of Justice to decide whether to prosecute, I urge the Court to make a formal referral so that the appropriate authorities can evaluate Plaintiff's conduct.

23. Courts *do* possess the authority to refer such matters to the U.S. Attorney in cases of suspected perjury or fraud upon the court. Here, given Plaintiff's brazen misconduct – and the fact that he is a former attorney who undoubtedly knew better – a referral is not only appropriate but necessary to vindicate the interests of justice. The message must be sent that abusing judicial resources through lies has consequences beyond just losing a lawsuit.

24. Additionally, I believe the Court should require Plaintiff to **reimburse the public fisc** for the costs he wrongfully avoided and to compensate Defendant for the expenses caused by his fraud. At a minimum, this means **revoking** Plaintiff's in forma pauperis status *nunc pro tunc* and entering a judgment for the $402 filing fee that should have been paid at the case's commencement.

25. It also could include awarding the reasonable attorney's fees and investigatory costs I incurred in uncovering Plaintiff's deception and bringing this Motion. The Court has inherent power to shift fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and that standard is plainly met here. Imposing these monetary sanctions in conjunction with dismissal serves both to make me whole and to deter others from engaging in similar misconduct.

26. Notably, by revoking IFP status and taxing the $402 fee to Plaintiff, the Court will put Plaintiff in the same position he would have been in had he told the truth from the start – effectively undoing the financial benefit of his fraud. But without a dismissal with prejudice, simply allowing him to pay the fee now would be an inadequate slap on the wrist, as explained above.

## Conclusion

27. For the foregoing reasons, and those set forth in my supplemental Motion papers, I respectfully request that the Court DISMISS THIS ACTION WITH PREJUDICE as a sanction for Plaintiff's willful fraud and pursuant to 28 U.S.C. § 1915(e)(2)(A) and Rule 41(b). This dismissal should be accompanied by appropriate further relief, including: (a) revocation of Plaintiff's IFP status *ab initio* and entry of judgment against Plaintiff for the $402 filing fee (as a sanction and deterrent); (b) a referral of Plaintiff's conduct to the United States Attorney's Office for investigation of potential offenses such as perjury, false statements, and wire fraud; and (c) any other sanction the Court deems just, such as an award of attorney's fees/costs incurred by Defendant in exposing this misconduct. Such relief is necessary and proper in light of the extraordinary bad faith shown.

28. If, however, the Court is not inclined to grant dismissal on the papers, I request in the alternative that the Court schedule an evidentiary hearing so that the key witnesses may testify in person. In particular, I am prepared to testify, and I would call Plaintiff Christopher Ambrose, private investigator Manuel Gomez (who has knowledge of Plaintiff's financial dealings and helped obtain evidence, including the declaration of Plaintiff's daughter), and Mia Ambrose (Plaintiff's daughter) to provide live testimony. An evidentiary hearing would allow the Court to make findings on a full, unequivocal factual record. I am confident that such a hearing would conclusively substantiate Plaintiff's intentional misrepresentations.

29. Nonetheless, given the strength of the written record already before the Court, I submit that a hearing should not be necessary and that dismissal with prejudice and referral for potential prosecution are appropriate *forthwith* to bring this baseless and fraud-tainted lawsuit to an end.

**WHEREFORE**, Defendant Bandy X. Lee respectfully requests that this Court:

A. Dismiss the Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A) and Fed. R. Civ. P. 41(b), due to Plaintiff's fraud on the Court in obtaining IFP status;

B. Refer Plaintiff Christopher Ambrose to the United States Attorney for the District of Connecticut for investigation of potential violations of 18 U.S.C. § 1621 (perjury), 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 1343 (wire fraud), and any other applicable federal statutes, arising from his conduct in this case and related court filings;

C. **Award Defendant her attorney's fees and costs**, as sanctions for Plaintiff's bad-faith litigation and misrepresentations; and

D. Grant **such other and further relief** as the Court deems just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this
28th day of February, 2026,
in New York, New York.                                    Respectfully submitted,

                                                          *Bandy Lee*
                                                          _____
                                                          Bandy X. Lee, M.D., M.Div.
                                                          1918 1st Avenue, Apt 516
                                                          New York, NY 10029
                                                          Tel: (917) 328-2492
                                                          Email: bandyleemd@gmail.com

**CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing REPLY DECLARATION OF DEFENDANT BANDY X. LEE, M.D., M.Div. has been filed with the CM/ECF system and will be sent via electronic mail to:

Christopher A. Ambrose
153 Middle Beach Rd.
Madison, CT 06443
ca0515@aol.com

Dated: February 28, 2026                    Respectfully submitted,

*[signature]*
Bandy X. Lee, M.D., M.Div.