**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHRISTOPHER A. AMBROSE, | ) | 3:25-CV-398 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANDY X. LEE, | ) | |
| *Defendant*. | ) | March 31, 2026 |

**RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

Plaintiff Christopher Ambrose brings this action *pro se* against Defendant Bandy Lee, who is also proceeding *pro se*. Plaintiff alleges that Defendant, a forensic psychiatrist, published articles and other web-based content stemming from her work in Plaintiff's Connecticut family court divorce and custody proceedings that falsely stated he sexually abused his children, as well as perpetrated other forms of abuse on them. Plaintiff brings state law claims of false light, defamation *per se*, general defamation, intentional infliction of emotional distress, and harassment in violation of Conn. Gen. Stat. § 53a-183(a), against Defendant.

Defendant has moved to dismiss Plaintiff's complaint on a number of grounds, including insufficient service of process, lack of personal jurisdiction, and failure to state a claim. For the reasons set forth below, the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction and DENIES the motion as to failure to state a claim, except as to Count Five of the complaint. Defendant has also filed a supplemental motion to dismiss based on what she claims are misrepresentations in Plaintiff's motion for leave to proceed *in forma pauperis*. As to Defendant's supplemental motion to dismiss, the Court requires further information from Plaintiff.

I.    FACTUAL BACKGROUND

Plaintiff's complaint is lengthy and filled with personal attacks on both his ex-wife and Defendant, reflecting the long and contentious history that predates this action. Accordingly, the Court does not recount all of Plaintiff's allegations here but cabins its recitation to the facts relevant to Defendant's motion to dismiss. The following factual allegations are accepted as true for purpose of this ruling and order. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.    Plaintiff and Defendant's Interactions

Plaintiff resides in Connecticut. Compl., ECF No. 1 at 19, 85. Defendant is a resident of New York. Mot. to Dismiss, ECF No. 30-1 at 1; Lee Disclosure Stat., ECF No. 45 at 1.

In July 2019, Plaintiff filed for divorce from his wife of fifteen years, Karen Riordan, requesting shared custody of their three adopted children. ECF No. 1 ¶¶ 12, 14. After this, Riordan "began making false allegations that Ambrose sexually and emotionally abused the children." ECF No. 1 ¶ 15. On April 26, 2022, Plaintiff was awarded sole custody and Riordan was permitted supervised visitation "only if she had a complete psychiatric examination by a pre-approved psychiatrist" and entered a therapeutic course of treatment. *Id.* ¶ 26.

Plaintiff references, but does not attach, the Connecticut Superior Court's custody decision, *Ambrose v. Ambrose*, No. FBT-FA-19-6088163-S, NNH-FA-20-5049348-S, 2022 WL 21749185 (Conn. Super. Ct. April 26, 2022).[1] The opinion states that "none of the allegations concerning the mistreatment of the three minor children have been substantiated. Despite investigations by DCF, Yale-New Haven Hospital, Connecticut Children's Hospital and work done by individuals . . . none of the allegations could be proven." *Id.* at *9. The court also noted that there were several

---

[1] The Court may take judicial notice of matters of public record, including rulings from other courts. *See, e.g.,* *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Glob. Network Comm'ncs, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

"determinations of coaching" of Plaintiff's children as to the answers they provided, specifically as to the allegations of sexual abuse. *Id.*

Presumably in accordance with the examination ordered by the Connecticut Superior Court, *see id.* at *17, Riordan retained Defendant to conduct a psychiatric exam of Riordan in April of 2023. ECF No. 1 ¶ 51. For fifteen years, Defendant had served on the faculty of Yale School of Medicine and Yale Law School, where she taught various courses. ECF No. 30-1 at 4. Yale decided not to reappoint Defendant as a voluntary Assistant Clinical Professor in 2020, ending her employment in Connecticut. *See Lee v. Yale Univ.*, No. 22-2634, 2023 WL 4072948, at *1 (2d Cir. June 20, 2023) (summary order).

On April 23, 2023, Defendant "met and interviewed" Riordan in Madison, Connecticut. ECF No. 1 ¶ 58. After meeting Riordan and Plaintiff's daughter, Defendant "switched her focus from Riordan to [Plaintiff], though she had never met or attempted to contact him." *Id.* ¶ 62. When Plaintiff was made aware that Riordan had hired Defendant, he sent Defendant a copy of the Superior Court decision and warned her of Riordan's alleged "history of withholding and misrepresenting material information to mental health professionals." *Id.* ¶ 60. On August 7, 2023, Defendant appeared at a restraining order hearing in the divorce action, "demanding that she be permitted to testify" on behalf of Riordan; the Court declined to allow her testimony. *Id.* ¶ 70. Defendant then sent the judge in the divorce action "an *ex parte* letter declaring she had diagnosed Ambrose to be a psychopath and dangerously mentally ill." *Id.* ¶¶ 67, 71.

Beginning in July of 2023, Defendant began a "very public online smear campaign" against Plaintiff, setting forth "false claims about him." *Id.* ¶ 77. Specifically, Plaintiff alleges that Defendant published false claims about his alleged abuse of his children and substantiated them by "publishing her diagnostic tests," private correspondence, and her psychiatric notes, as well as

3

by sharing her professional files with other bloggers.  *Id.* ¶¶ 78–79.  Defendant also allegedly gave interviews on online platforms including Newsbreak, Inside Investigator, and Substack concerning Plaintiff, often offering her commentary "explicitly in her professional capacity as a renowned Yale psychiatrist."  *Id.* ¶¶ 80–81.  Plaintiff states that Defendant has claimed "on many sites" that she "duly diagnosed [him] to be a psychopath and danger to his ex-wife and children, and even posted her supporting diagnostic test and notes," despite never evaluating Plaintiff.  *Id.* ¶ 82.  Plaintiff has not provided links to some of these alleged publications:  for some, the link he has provided is broken or takes the user to a page that no longer exists.  *See e.g.*, *id.* ¶¶ 80, 98, 247.

Plaintiff has included links to numerous of Defendant's alleged online publications in FrankReport.com, where he alleges Defendant "first published false, derogatory information" about him.  *Id.* ¶¶ 128, 133, 173, 178.  A review of the links to the articles that Plaintiff provided lists a Frank Parlato or Janine Morrison, not Defendant, as the author of a vast majority of these articles, which appear to merely quote Defendant's statements in documents or testimony she submitted in connection with the divorce action.  Of note, Plaintiff has another action against Frank Parlato—alleged to be a person Ms. Riordan moved in with after the divorce, *see id.* ¶ 43, pending before the undersigned.  *See Ambrose v. Parlato*, No. 3:25-CV-1151 (SVN).

Plaintiff does cite to one article Defendant authored on FrankReport.com, where she refers to Plaintiff as an "abuser" and criticizes the family court system as a whole.  ECF No. 1 ¶ 302 (*see* https://frankreport.com/2023/10/21/forensic-psychiatrist-bandy-lee-faces-threats-slander-for-advocating-for-ambrose-teens/ (last accessed March 31, 2026) (the "Lee Article")).  Plaintiff also refers to Defendant's appearances on a recorded talk show hosted by Richard Luthmann where she allegedly defames Plaintiff.  ECF No. 1 ¶¶ 368–83.  Defendant also admits that the following quotation is hers:

> How much more evidence does one need that this is the psychological profile of a man who has sexually abused his children and is continuing to abuse them, aided and abetted by a system that is supposed to protect them?

ECF No. 30-1 at 10.

In October of 2023, Plaintiff sent Defendant a cease-and-desist letter regarding her previous online statements. *Id.* ¶ 85. Since receiving the letter, Plaintiff alleges that Defendant "removed articles from her medium.com site," but also published "new commentary, brutally defaming [Plaintiff]." *Id.* ¶ 89.

Defendant, for her part, denies that any of her statements are defamatory; in her view, they are all either "(1) an expression of opinion; (2) derived from public court records; or (3) constitutionally protected commentary about a matter of public interest." ECF No. 30-1 at 8. Defendant has submitted a declaration regarding her contacts with Connecticut and stating her comments were "made in good faith, based on years of professional experience in forensic psychiatry, my knowledge of family trauma and child abuse, and a substantial evidentiary record." Bandy Decl., ECF No. 30-3 ¶ 16. Defendant attests that she was never personally served in this action, and that she has "never purposefully directed any commercial or personal activity into the State of Connecticut." *Id.* ¶¶ 8, 11.

B.  Procedural History

Plaintiff commenced this action on March 17, 2025. ECF No. 1. Plaintiff filed a motion to proceed *in forma pauperis*, which the Court granted. Order, ECF No. 4. Defendant then filed her motion to dismiss, which Plaintiff has opposed. On February 2, 2026, while her previous motion to dismiss was still pending, Defendant filed a supplemental motion to dismiss arguing that this Court should dismiss the action with prejudice as a sanction for Plaintiff's false statements in

his motion to proceed *in forma pauperis*.  Second Mot. to Dismiss, ECF No. 47.[2]  Plaintiff has opposed this motion as well.

## II.    SPECIAL SOLICITUDE

Pleading standards apply to self-represented parties as well as represented parties.  It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest."  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted).  But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

Defendant, as a non-lawyer whom neither party represents is a lawyer, a frequent *pro se* litigator, or a person otherwise especially familiar with legal procedure, is entitled to this deference.  Plaintiff, however, graduated law school and was a practicing transactional lawyer for five years "at a large firm on Wall Street."  Ambrose Decl., ECF No. 40-1 ¶ 30.  Plaintiff allowed his law license to "lapse" but maintains he has not been "disciplined" by any Bar.  *Id.* ¶¶ 30–31.[3] Plaintiff argues that while he has a legal education and was a practitioner for five years, that "does not equate to courtroom experience or familiarity with federal litigation."  *Id.* ¶ 35.  Plaintiff therefore requests that he be afforded "procedural solicitude."  *Id.* (citing *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010)).

---

[2] While Defendant has requested oral argument on her initial motion to dismiss, the Court proceeds to rule on it without holding oral argument, in the interest of an efficient and expeditious resolution of this action, as it has the authority to do.  *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("district courts have the inherent authority to manage their dockets . . . with a view toward the efficient and expedient resolution of cases").

[3] A review of the publicly accessible New York bar registration website refers to Plaintiff as a "Suspended, delinquent" attorney.  *See Attorney Online Services - Search Results* (last accessed March 31, 2026).  A link on that page also reflects that Plaintiff is listed as an attorney who is "in Violation of Judiciary Law Section 468-a." *Id.*  Section 468-a of the Judiciary Law requires every resident and nonresident attorney admitted to practice in the State of New York to file a biennial registration statement with the administrative office of the courts.

While the Second Circuit has declined to afford disbarred attorneys' special solicitude in several non-precedential summary orders, it has yet to rule on the issue in binding precedent, based on the Court's research. *See United States v. Pierce*, 649 F. App'x 117, 118 n.1 (2d Cir. 2016) (summary order) (citing *Mitchell v. Con Edison*, 531 F. App'x 140, 141 (2d Cir. 2013) (summary order)); *In re Truong*, 327 F. App'x 260, 262 (2d Cir. 2009) (summary order). Nonetheless, the rationale behind not affording former lawyers familiar with the legal process special solicitude applies equally to disbarred and suspended attorneys. Further, Plaintiff has not directed the Court to any cases that draw the line of whether to grant a former attorney special solicitude along the transactional or litigation divide (assuming that the practice of law can even be cleanly and consistently split along those lines). Given the foregoing, and the lack of precedent supporting Plaintiff's position, the Court declines to afford him special solicitude in this action.

## III.    PROCEDURAL GROUNDS FOR DISMISSAL

Defendant has moved to dismiss this action on the following grounds:  lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); insufficient service, under Rule 12(b)(4); insufficient service of process, under Rule 12(b)(5); and failure to state a claim, under Rule 12(b)(6). Mot. to Dismiss, ECF No. 30 at 1. The motion also seeks to dismiss the action under *forum non conveniens* and to strike counts four and five of Plaintiff's complaint as duplicative. *Id.* The Court first considers questions of service and personal jurisdiction as threshold issues and then turns to the merits-based arguments. *See Ferrara v. Munro*, 585 B.R. 269, 281 (D. Conn. 2018).

"A motion to dismiss must be granted if a court lacks personal jurisdiction over a defendant." *Id.* (citing Rule 12(b)(2)). But for a court to exercise personal jurisdiction over a defendant, "there must first be an appropriate service of process" on such defendant. *Id.* at 282;

7

*see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) ("First, the plaintiff's service of process upon the defendant must have been procedurally proper."). Accordingly, the Court first considers whether there was sufficient service of process, and then turns to whether personal jurisdiction exists over Defendant.

A. Sufficiency of Service of Process

Federal Rule of Civil Procedure 4(e) prescribes the following methods for service on an individual in a judicial district of the United States: "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; or by "delivering a copy of [the summons and of the complaint] to an agent authorized by appointment or by law to receive service of process." Further, Connecticut law provides that "[a]ny nonresident individual . . . over whom a court may exercise personal jurisdiction, . . . shall be deemed to have appointed the Secretary of the State as [her] attorney and to have agreed that any process in any civil action brought against the nonresident individual . . . may be served upon the Secretary of the State and shall have the same validity as if served upon the nonresident individual . . . personally." Conn. Gen. Stat.§ 52–59b(c).

New York state law provides that an individual may be served "by delivering the summons within the state to the person to be served." New York C.P.L.R. § 308(1). Under New York state law, service by mail on an individual is only permissible if the summons is also delivered "within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served." *Id.* § 308(2). In other words, service by mail must be *in addition* to in-person service on a person of suitable age and discretion at the proper location.

Plaintiff has properly effectuated service under New York law. Through a professional process service, Plaintiff left the service packet for this action with Defendant's father at her abode,

and mailed the packet to her at that address as well.  Affidavit of Service, ECF No. 18 at 1; Summons, ECF No. 27 at 1–2.  Defendant does not challenge the validity of the affidavits of service Plaintiff had submitted, but instead argues she was never personally served, which she claims is required in a defamation action.  ECF No. 30-3 ¶¶ 11–13.  But Plaintiff has not provided any caselaw for this proposition that defamation actions are subject to a special rule, and the Court has not found any.  Defendant's citation to *Tyler v. Tyler*, 151 Conn. App. 98, 105–06 (2014) is inapposite, as it is neither a defamation action nor stands for the proposition that personal service is required under Connecticut law for defamation actions.[4]  Indeed, the Federal Rules of Civil Procedure do not change the means for effecting proper service based on the type of underlying claim at issue.  Accordingly, the Court finds that service was properly effectuated under New York law, and need not analyze whether service complies with Connecticut law.

Defendant's motion to dismiss is therefore denied, insofar as it is brought under Rule 12(b)(5).[5]

B. Personal Jurisdiction

   *1. Legal Standard*

On a Rule 12(b)(2) motion to dismiss, Plaintiff bears the burden of making a *prima facie* showing that personal jurisdiction over Defendant exists.  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*); *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*,

---

[4] Given Defendant's serious misreading of *Tyler*, the Court suspects she used artificial intelligence ("AI") to draft at least that portion of her brief.  The Court cautions Defendant that the use, without verification, of the accuracy of the information AI platforms generate—like any other shoddy research method from other sources or tools—implicates Federal Rule of Civil Procedure 11, the central purpose of which is to deter baseless filings in district court and thus to streamline the administration and procedure of the federal courts.  Rule 11 applies fully to *pro se* litigants. Therefore, all parties are on notice that the Court has a no-tolerance policy for any briefing (AI-assisted or not) that hallucinates legal propositions or otherwise severely misstates the law.  Such filings will often result in sanctions absent reasonable excuse.  *See generally Willis v. U.S. Bank Nat'l Ass'n et al*, No. 3:25-CV-516-BN, 2025 WL 1408897 (N.D. Tex. May 15, 2025).

[5] Defendant makes no separate argument that the *service* was improper, as opposed to the *service of process* being improper.  Thus, the Court does not separately address Rule 12(b)(4).

624 F.3d 123, 138 (2d Cir. 2010) (where neither party seeks to conduct discovery or requested an evidentiary hearing on matters of jurisdiction, the plaintiff need only make *a prima facie* showing of personal jurisdiction). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010) (internal quotation marks and citation omitted; alteration in original).

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway" and "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (*per curiam*) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). In ruling on the motion, a court may consider "all pertinent documentation submitted by the parties." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 463 (S.D.N.Y. 2008) (cleaned up). The pleadings and affidavits are construed in the light most favorable to the plaintiff and "all doubts are resolved in its favor." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

Importantly, however, the plaintiff may not rely on "conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Mazloum v. Int'l Com. Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Jazini*, 148 F.3d at 185 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Finally, while the Court construes all pleadings and affidavits in the light most favorable to the plaintiff, it must not "draw argumentative

10

inferences in the plaintiff's favor." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

### 2. Discussion

The Court concludes that Plaintiff has met his *prima facie* burden and shown that the Court has personal jurisdiction over Defendant.

Whether a federal court has personal jurisdiction over a non-resident defendant is a two-step inquiry. *See Chloe v. Queen Bee of Beverly Hills,* LLC, 616 F.3d 158, 163 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007). First, (1) state law must authorize personal jurisdiction; and (2) the exercise of jurisdiction must comport with constitutional due process principles. *Chloe*, 616 F.3d at 163–64. "The first inquiry must be whether [Connecticut's] long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if [the court] find[s] the statute to be applicable do[es it] reach the question whether it would offend due process to assert jurisdiction." *W. World Media, LLC v. Ikamobile Ltd.*, 809 F. Supp. 2d 26, 30 (D. Conn. 2011) (quoting *Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 250 (1983)) (alterations omitted).

### a. State Long-Arm Statute

Here, Plaintiff identifies the correct Connecticut long-arm statute—Conn. Gen. Stat. § 52-59b(a)—which provides for personal jurisdiction over a non-resident individual who in relevant part: (1) "[t]ransacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; [or] (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives

11

substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

At this stage of the litigation, Plaintiff had made a *prima facie* showing that Defendant "transact[ed] any business" within Connecticut, sufficient to satisfy Conn. Gen. Stat. § 52-59b(a)(1). The phrase "transacts any business within the state" is construed "quite broadly" by the Supreme Court of Connecticut. *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 560 (D. Conn. 2010) (citing *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981)); *see also Mills v. Profit Drivers LLC*, No. 3:25-CV-203 (MPS), 2026 WL 25629, at *4 (D. Conn. Jan. 5, 2026) (same). The phrase can embrace as little as "a single purposeful business transaction." *Zartolas*, 184 Conn. at 474. In addition to examining whether the defendant transacts business in the state, the Court must also find that "the . . . cause of action arose from the defendant's transaction of business within [Connecticut]." *Simonson v. Olejniczak*, No. 22-1219, 2023 WL 2941521, at *2 (2d Cir. Apr. 14, 2023) (summary order) (citing *Zartolas*, 184 Conn. at 477); *Statek Corp. v. Coudert Bros. LLP*, No. 3:07-CV-456 (SRU), 2018 WL 834227, at *15 (D. Conn. Feb. 12, 2018) ("section 52-59b(a)(1)'s second requirement" is that plaintiff's cause of action against the defendant arose from the defendant's business activity in Connecticut) (citing *Ryan v. Cerullo*, 282 Conn. 109, 121 (2007)). And despite that the statute is interpreted broadly, "[t]here must be some definitive act taken by the defendant that evinces a purposeful availment of the privileges of conducting the subject activity within the forum state and that, subsequently, invokes the benefits and protections of its laws." *Walshon v. Ballon Stoll Bader & Nadler, P.C.*, 121 Conn. App. 366, 372 (2010). Accordingly, where a defendant's "contact with Connecticut w[as] simply a byproduct of

[p]laintiff's residence in the state," this is not sufficient to satisfy § 52-59b(a). *Lee v. Golaszewski*, No. 3:23-CV-400 (OAW), 2023 WL 7497103, at *4 (D. Conn. Nov. 13, 2023).

Plaintiff argues that Defendant has "repeatedly transacted business in Connecticut." Pl.'s Opp'n Brief, ECF No. 40 at 4. Specifically, Plaintiff alleges that Defendant evaluated his ex-wife and interviewed his daughter at their home in Connecticut as part of the court-ordered evaluation, as well as in connection with a book she aims to publish; testified and appeared in Connecticut court proceedings; initiated contact with state officials; and published defamatory statements online targeting Plaintiff, a Connecticut resident. ECF No. 40 at 15. As the Court finds that the first two of these activities suffices to transact business in the state, it need not reach the other assertions.

First, Plaintiff invokes Defendant's psychiatric evaluation of his ex-wife in Connecticut, which was undertaken in connection with the Connecticut Superior Court's order in the divorce action. Plaintiff alleges that his ex-wife "hired" Defendant for the evaluation. ECF No. 1 ¶ 51; *see also id.* ¶ 59. He further alleges that Defendant appeared at a Connecticut Superior Court restraining order hearing "without warning, demanding that she be permitted to testify for Riordan," but the Court did not allow her to testify. *Id.* ¶ 70. Drawing reasonable inferences in favor of Plaintiff, these allegations demonstrate that Defendant has transacted business in Connecticut, by performing the evaluation for pay in the state and voluntarily appearing at a state court hearing. *Cf. Simonson*, 2023 WL 2941521, at *2 (noting that attorneys' mere representation of a client in Connecticut, where the attorneys did not solicit business in the state, performed their services exclusively out-of-state, and did not travel to the state did not establish personal jurisdiction under Connecticut's long-arm statute). And Plaintiff's claims in this action flow from

Defendant's evaluation of his ex-wife and her subsequent involvement in their divorce and custody battle, meeting the second requirement for the exercise of jurisdiction.

Defendant's interviews with Plaintiff's ex-wife and daughter in connection with Defendant's book likewise support that she has transacted business within Connecticut. *See* ECF No. 1 ¶¶ 51, 58–59, 97, 307; *see also* ECF No. 40, at 15. While Defendant's book is forthcoming and thus any interview materials—and what they state about Plaintiff—are unpublished, Plaintiff alleges the interviews took place in Connecticut, and they would have arisen from the interactions and events that form the basis for Plaintiff's causes of action. Further, the book is presumably a personal business venture. Although Defendant asserts that she has "never purposefully directed any commercial or personal activity into the State of Connecticut," ECF No. 30-3 ¶ 8, Plaintiff's allegation that she conducted interviews of his daughter and ex-wife in Connecticut for the book suffices at this juncture, when the facts are construed in the light most favorable to him. Defendant's own GoFundMe page, linked to in Plaintiff's complaint, also supports the proposition that Defendant is working on a forthcoming "project . . . writing about the scope, scale, and severity" of state family courts and their proceedings. *See* https://www.gofundme.com/f/help-us-to-expose-the-dangerous-case-of-family-courts (last accessed March 31, 2026); ECF No. 1 ¶ 116. Thus, the interviews conducted in preparation for publishing her book represent Defendant's purposeful availment of the privilege of conducting business in Connecticut for a personal purpose.

Accordingly, given the Connecticut Supreme Court's broad interpretation of "any business," and the early stage of this litigation where the Court must construe the pleadings in the light most favorable to the Plaintiff, *see CutCo Indus.*, 806 F.2d at 365, the Court finds that Plaintiff has sufficiently put forth *prima facie* evidence that Defendant's psychiatric evaluation, voluntary

14

participation in the state court proceeding, and interviews related to her forthcoming book constitute transacting "any business" under § 52-59b(a)(1).

While the Court need not reach Plaintiff's alternative state law bases for personal jurisdiction given its findings above, regardless, those arguments would be unavailing. Plaintiff argues that § 52-59b(a)(2) and (3) are applicable here. Not so. First, § 52-59b(a)(2) applies only to tortious acts committed *within* the state. The only actions Defendant is alleged to have carried out in the state are an evaluation of Defendant's ex-wife, interviews of his daughter, and statements in connection with the divorce action. ECF No. 40 at 15. None of these events standing alone, without further factual allegations, constitute a tort, making § 52-59b(a)(2) in applicable. Second, § 52-59b(a)(2) and (3) both explicitly exclude "a cause of action for defamation of character arising from the act." Plaintiff's quotations of the statute's language curiously exclude this language exempting defamation causes of action. *See* ECF No. 40 at 15. Plaintiff even goes so far as to assert Connecticut courts "have repeatedly held that out-of-state defamatory acts directed at Connecticut residents satisfy § 52-59b(a)(2) and (3)." *Id.* at 16. But none of Plaintiff's cited state court cases analyzing § 52-59b(a)(2) and (3) either allege defamation causes of action or uphold personal jurisdiction over defamation causes of action under the statute. *See Oppenheim v. Erwin*, No. CV-441611, 2001 WL 419236, at \*1 (Conn. Super. Ct. Apr. 10, 2001) (claims for intentional infliction of emotional distress and libel); *Jane Doe One v. Oliver*, No. CV-990151679-S, 2003 WL 21235402, at \*1 (Ct. Super. Ct. May 19, 2003) (§ 52-59b(a)(2) applied because plaintiffs "allege[d] causes of action distinct from defamation"); *David v. Weitzman*, 677 F. Supp. 95, 97 (D. Conn. 1987) ("the only tortious conduct alleged here is fraudulent misrepresentation"); *Knipple v. Viking Commc'ns, Ltd.*, 236 Conn. 602, 603 n.1 (1996) (common law claims of breach of contract and fraud, in addition to violations of the Connecticut statutes); *Rios v. Fergusan*, 978

15

A.2d 592, 593–94 (2008) (action for a temporary restraining order under a domestic violence statute).

Plaintiff places particular emphasis on *Rios*, but setting aside its distinct procedural posture, the case does not support Plaintiff's arguments, on its facts. There, the defendant had "posted a video on YouTube in which he brandished a firearm in a rap song in which he states that he wants to hurt the applicant, to shoot her and to put her face on the dirt until she can't breathe no more." *Rios*, 978 A.2d at 595 (cleaned up). The messages at issue there "specifically target[ed] a Connecticut resident with its threats to the applicant's life and safety and thereby create[ed] in her a fear for her well-being." *Id.* at 600. Defendant has made no such direct threats to Plaintiff's safety or well-being here. Any threats Plaintiff has allegedly suffered have come from unidentified commentors on the various platforms where Defendant discussed her experiences with Plaintiff and his family. Accordingly, *Rios* is not instructive here.

Finally, to the extent Plaintiff has brought non-defamation causes of action, to have personal jurisdiction over Defendant for those causes of action under § 52-59b(a)(3), Plaintiff would still have to demonstrate that Defendant either: "(A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." While Plaintiff has demonstrated that Defendant conducted *some* business in the state, he has not demonstrated that she *regularly* does business in or has persistent contact with Connecticut. Defendant was formerly a Yale employee, but her position was not renewed in 2020, and Plaintiff has not alleged that she has other consistent work in the state. Additionally, even assuming that Defendant should have reasonably expected her acts to have consequences in the

16

state, Plaintiff has not demonstrated that Defendant derives "substantial revenue" from interstate or international commerce. While Defendant is a published author, Plaintiff has not established whether she derives a significant portion of her income from interstate or international book sales, if any.

Accordingly, Plaintiff has not established that either § 52-59b(a)(2) or (3) provides a state law hook for personal jurisdiction over Defendant. But, because Plaintiff has set forth a *prima facie* showing that Defendant "transacted any business" in Connecticut pursuant to § 52-59b(a)(1), the Court proceeds to analyze where the exercise of personal jurisdiction would comport with due process.

### b. Due Process Analysis

The Court also finds that Plaintiff's pleadings have made a *prima facie* showing that the exercise of personal jurisdiction over Defendant comports with due process.

The Fourteenth Amendment's Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The nonresident defendant generally must have "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (cleaned up) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The due process "analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 164.

To satisfy the minimum contacts inquiry, a plaintiff must show that the court has either general or specific jurisdiction over the defendant. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018). "For an individual, the paradigm forum for the exercise of general jurisdiction

17

is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A.* v. Brown, 564 U.S. 915, 924 (2011).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). "The exercise of specific jurisdiction depends on in-state activity that '*gave rise to the episode-in-suit*.'" *Waldman v. Palestine Lib. Org.*, 835 F.3d 317, 331 (2d Cir. 2016), *mandate recalled by Waldman v. Palestine Lib. Org.*, --- F.4th ----, 2026 WL 860256 (2d Cir. Mar. 30, 2026) (quoting *Goodyear*, 564 U.S. at 923 (emphasis in original)).  In this Circuit, "where 'the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff,'" a court is to employ "an 'effects test,' by which 'the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum.'" *Tarsavage v. Citic Trust Co., Ltd.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y.2014) (cleaned up and quoting *Licci*, 732 F.3d at 173). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.  The analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (collecting cases).  A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction"; "these same principles apply when intentional torts are involved." *Id.* at 286 (cleaned up).  Thus, "[a] forum

State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

Turning to the present case, the Court concludes that the exercise of jurisdiction over Defendant comports with due process. Defendant's affidavit states that she is a resident of New York, a fact that Plaintiff does not dispute. *See* ECF No. 30-3 ¶ 2. Thus, general jurisdiction is not available here. *See Goodyear*, 564 U.S. at 924; *see also Lee*, 2023 WL 7497103, at *6 (contact with Connecticut was "limited to communications with Plaintiff" and travel to "solicit business from Connecticut entities" which "clearly d[id] not rise to the requisite level of contact" for general jurisdiction). Accordingly, Plaintiff must demonstrate that Defendant is subject to specific jurisdiction.

Turning to specific jurisdiction, Plaintiff (and his family) is Defendant's only contact with Connecticut. While Defendant was formerly a Yale University employee, she has not been employed there since 2020, and Plaintiff has not alleged that she maintains any other employment in the state independent from her evaluation of Plaintiff's family. A "defendant's relationship with a plaintiff or third party," which is what Plaintiff's complaint is able to establish, "standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

Nevertheless, Plaintiff contends that because of the nature of his claims—defamation—and the fact that the conduct involved occurred out of state, the "effects" test set forth in *Calder v. Jones* mandates a finding of specific jurisdiction. 465 U.S. 783 (1984); ECF No. 40 at 17–18. In *Calder*, the Supreme Court held that California could assert personal jurisdiction that comported with due process over two Florida-domiciled journalists who published in print an allegedly libelous article against a California plaintiff in a newspaper whose largest readership was based in

19

California.  465 U.S. at 785–86.  Both journalists wrote the story outside of California, "relying on phone calls to sources in California," for the article.  *Id.* at 785.

Applying *Calder*, courts in this district have similarly found that online posts targeted at a plaintiff who lives in Connecticut were sufficient to establish specific personal jurisdiction over the defendant where the defendant knew the plaintiff was a Connecticut resident, the plaintiff's life was "centered in Connecticut and the brunt of the harm was felt . . . in Connecticut."  *Doe v. Ciolli*, 611 F. Supp. 2d 216, 223 (D. Conn. 2009) (citing *Calder*, 465 U.S. at 788–90); *Sanchez v. Leonard*, No. 3:24-CV-1434 (SFR), 2025 WL 3229809 at *4 (D. Conn. May 1, 2025), *report and recommendation adopted*, *id.*, ECF No. 18 (order dated October 6, 2025); *Imbruce v. Buhl*, No. 3:15-CV-554 (JAM), 2016 WL 2733097, at *7 (D. Conn. May 10, 2016).  Here, Defendant was aware that Plaintiff was a resident of Connecticut, published at least one article on FrankReport.com concerning him and the characterizations at the heart of this action, and the brunt of the harm was felt in Connecticut, where Plaintiff resides.  Applying this precedent, the Court finds that specific personal jurisdiction is appropriate here.

Finally, the exercise of personal jurisdiction over Defendant would likewise be reasonable here.  For reasonableness, the key question is "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Chloe*, 616 F.3d at 164 (internal quotation marks omitted).  "Courts are to consider five factors in evaluating reasonableness:  (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering

substantive social policies." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).

Weighing these factors, the Court finds that exercising personal jurisdiction over Defendant is reasonable. Two factors strongly support a finding of reasonableness. First, while forcing Defendant to litigate this action in Connecticut will place a burden on her, it will not be an extreme burden; New York is only one state over and Defendant has familiarity with Connecticut from her time as an employee in the state (and her involvement in the underlying divorce action). Second, Connecticut has an interest in this action, given it involves the alleged defamation of one of its citizens and is related to an underlying family court proceeding in the state. The remaining factors are, at best, neutral. While Plaintiff would certainly find it more convenient to litigate this action here, it is not clear that Connecticut could offer any more effective relief than New York. Further, while this Court has some familiarity with this action, it is still in its very early stages and the Court's ability to transfer this case to another jurisdiction would mean the parties could continue the action without the need to re-file, making this factor neutral. Finally, Connecticut has an interest in furthering substantive policies that work to safeguard the reputations of its citizens, but this is tempered by the fact that the alleged defamatory publications were all written and published out of state, making this element also neutral at best. Weighing all five factors, and considering that no factor suggests that the exercise of personal jurisdiction over Defendant is *unreasonable*, the Court finds that the exercise of specific personal jurisdiction over Defendant is reasonable. Thus, Defendant's motion to dismiss pursuant to Rule 12(b)(2) must be denied.

C. *Forum Non Conveniens*

The Court next rejects Defendant's request to dismiss the action under the doctrine of *forum non conveniens* (and to transfer the case to another federal district, an argument the Court construes Defendant's brief as advancing).

*Forum non conveniens* permits a court to dismiss an action in its discretion, "even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo– Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted). Critically, however, *forum non conveniens* applies only "when it appears that a *foreign* forum would be more convenient, fair, or sparing of judicial resources." *Carney v. Beracha*, 996 F. Supp. 2d 56, 71 (D. Conn. 2014) (emphasis added); *see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 442, 430 (2007) ("[t]he common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad" (internal citation and quotation marks omitted)). Here, Defendant has not put forth a *foreign* alternative forum, only a domestic alternative: New York. Accordingly, *forum non conveniens* is not applicable here and the Court denies Defendant's motion to dismiss in so far as it requests dismissal on *forum non conveniens* grounds.

The proper procedural mechanism for transfer to another federal district court is 28 U.S.C. § 1404(a), which allows for transfer of a civil action to any other district where it might have been brought. Although Defendant does not request transfer under § 1404(a), given that she is proceeding *pro se* and analyzed the relevant factors in her discussion of the doctrine of *forum non conveniens*, the Court analyzes whether transfer to the Southern District of New York would be appropriate under § 1404(a).

As the party seeking transfer, Defendant must show by "clear and convincing evidence" that the balance of convenience favors transfer. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am.,*

22

*Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). The following factors should be considered in determining whether to grant a motion to transfer venue:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Id.* at 112. Courts have also considered "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice." *Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 213 (S.D.N.Y. 2024) (internal citation omitted).

First, the Court concludes that the case could have been brought in the Southern District of New York. *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) ("For the purposes of section 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court."). Here, the Southern District would have had subject matter jurisdiction, personal jurisdiction, and venue, insofar as Defendant resides there. *See* 28 U.S.C. § 1391(b)(1).

In evaluating the relevant factors, the Court weighs heavily Plaintiff's choice of forum. "A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant. Where the factors are equally balanced, the plaintiff is entitled to its choice." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (citations omitted). Plaintiff resides in Connecticut; the allegations arise from Defendant's involvement in Plaintiff's divorce action in Connecticut; and he chose to file suit here. Thus, Plaintiff's choice of forum is deserving of significant deference.

23

Defendant, for her part, has not sustained her burden of showing by clear and convincing evidence that the balance of convenience favors transfer. While Defendant points out that she and many of her witnesses are located in New York, she also states that others are simply located "outside Connecticut." ECF No. 30-1 at 21. This latter category of witnesses—which may include, for instance, Plaintiff's daughter—does not necessarily support transfer of the case *to New York*. *See* Mia Ambrose Decl., ECF No. 47-1 at 8 (referencing a confidential address in Tallahassee, Florida). Plaintiff, of course, is located in Connecticut, and states he has no connections to New York.

The other factors do not weigh in favor of transfer to New York, either. The location of relevant documents and ease of access to sources of proof carries less weight now, in light of technological advances in transportation and communication, so the Court does not weigh this factor heavily. *See Star Colbert v. Dougan*, 724 F. Supp. 3d 304, 329 (S.D.N.Y. 2024) (assessing that factor in the *forum non conveniens* context). Next, the locus of operative facts is Connecticut because the divorce action that precipitated Defendant's involvement with Plaintiff occurred here, despite that Defendant asserts that the "creation, authorship, and publication of the challenged statements" all occurred in New York. *See* ECF No. 30-1 at 20; *Boehner v. Heise*, 410 F. Supp. 2d 228, 242 (S.D.N.Y. 2006) (concluding that locus of operative facts was in New York where the injury occurred, even though the defamation claims arose out of a letter allegedly written in Wisconsin). Defendant makes no arguments concerning the availability of process to compel the attendance of witnesses or the relative means of the parties. Finally, New York and Connecticut courts are similarly situated with respect to being able to evaluate the governing law, and the interests of justice and efficiency do not strongly favor transfer.

Accordingly, the Court declines to transfer this action to the Southern District of New York under § 1404(a).

D. Motion to Strike

Finally, Defendant has moved under Rule 12(f) to strike Plaintiff's intentional infliction of emotion distress ("IIED") count and his harassment count pursuant to Conn. Gen. Stat. § 53a-183(a). Defendant's motion to strike is denied as to both counts as it impermissibly seeks to dismiss Plaintiff's *claims*, an action which is properly addressed pursuant to a Rule 12(b)(6) motion, not a Rule 12(f) motion.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because striking a pleading is a "drastic remedy," motions to strike are generally disfavored and require the moving party to "clearly show that the challenged matter has no bearing on the subject matter of the litigation." *Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 102 (D. Conn. 2008) (quoting *2 Moore's Federal Practice*, § 12.37 (3d ed. 2007)). But where a party moves "to dismiss . . . [claims] pursuant to Rule 12(f), the motion to dismiss the [claims] should have been brought pursuant to Rule 12(b)(6)." *Assets Recovery Ctr. Invests., LLC v. Smith*, No. 13-CV-253 (CBA), 2014 WL 3525011, at *10 (E.D.N.Y. Mar. 12, 2014) (concerning counterclaims); *see also* 5A Wright and Miller, Federal Practice and Procedure, § 1380.

Accordingly, the Court will address Defendant's arguments to strike Counts Four and Five in the context of her Rule 12(b)(6) motion to dismiss, and denies Defendant's motion to strike.[6]

E. Conclusion

To summarize, the Court finds that:  service has been properly effectuated on Defendant under New York Law; the exercise of personal jurisdiction over Defendant is consistent with state law and satisfies due process; *forum non conveniens* is inapplicable and transfer is not warranted under § 1404(a); and Defendant's arguments to strike counts four and five of Plaintiff's complaint should be evaluated pursuant to Rule 12(b)(6).  The Court thus proceeds to analyze the merits-based grounds for Defendant's motion to dismiss.

## IV.    FAILURE TO STATE A CLAIM

In addition to her procedural grounds for dismissal, Defendant also moves to dismiss all claims for failure to state a claim.  ECF No. 30 at 1.  Plaintiff's complaint states the following claims for relief:  invasion of privacy by false light (Count One); defamation *per se* (Count Two); general defamation (Count Three); intentional infliction of emotional distress (Count Four); and harassment (Count Five).  *See* ECF No. 1 ¶¶ 448–95.  For the reasons set forth below, Defendant's motion is denied as to Counts One through Four of Plaintiff's complaint and granted as to Count Five of Plaintiff's complaint.  The Court addresses each of Plaintiff's claims in turn.

---

[6] The Court notes that in arguing to strike count four of Plaintiff's complaint, Defendant cites to two cases.  First, she cites *Martin v. Hearst Corp.*, 777 F.3d 546, 552 (2d Cir. 2015), as "binding Second Circuit precedent" that "a plaintiff may not sidestep constitutional limits on defamation by restyling the same fact as separate torts."  ECF No. 30-1 at 19.  But *Martin* deals with *negligent* infliction of emotional distress ("NIED"), not IIED; does not discuss any motion to strike; and, moreover, explicitly states that the NIED claim "fails because there is nothing negligent about publishing a true and newsworthy article," not because of any apparent restyling of a defamation claim.  *Martin*, 777 F.3d at 552.  Defendant's second cited case, *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988), fares no better.  It similarly does not mention any motion to strike and stands for the fact that *public figures and public officials* cannot recover in an IIED action absent a showing of actual malice.  *Id.*  Defendant has not argued that Plaintiff is a public figure or official, making this case inapplicable as well.  Given the serious misreading of these cases, the Court again suspects Defendant used AI to draft this portion of her brief as well.  The Court reiterates its no tolerance policy for the use of AI in drafting pleadings.

A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

27

B.  Discussion

For the reasons discussed below, Defendant's motion to dismiss is denied as to all claims except as to Count Five, harassment under Conn. Gen. Stat. § 53a-183(a), as to which the motion is granted.

### 1.  First Amendment Protection

Defendant first offers a general defense that her speech is protected under the First Amendment as it is related to a matter of public concern, "including the conduct of public officials and child custody decisions in the family court system." ECF No. 30-1 at 18.

"[T]he First Amendment places limitations on the States' power to enforce their libel laws," particularly when the speech involves a matter of public concern. *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 66 (1976). "[W]hen speech is related to a matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public, . . . then the speaker may be liable for damage to reputation . . . only if the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 129 (2d Cir. 2013) (quoting *Hustler Mag., Inc.*, 485 U.S. at 52 (internal quotation marks omitted). Thus, "regardless of the claim at issue, be it defamation, intentional infliction of emotional distress, or negligence[] heightened First Amendment protections apply to any tort alleging reputational harm as long as the underlying speech relates to a matter of public concern." *Id.*

"Because a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself,' courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) (quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)). Accordingly,

the Court first looks to whether Defendant has shown that the First Amendment provides a basis to dismiss Plaintiff's claims. On the limited facts available at the pleading stage of this action, this argument is premature.

To start, Defendant cites to *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and *Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990), in support of the First Amendment's application to her comments. But both of these cases involved media company defendants, not private defendants, and, further, the plaintiff in *Sullivan* was a public official. Here, Defendant has not shown that Plaintiff is a public figure, and while she repeatedly touts her credentials and public renown, she is not a media defendant.[7]

Nevertheless, affording *pro se* Defendant the requisite special solicitude, and recognizing that Defendant has made *a* First Amendment argument, the Court sets forth the proper inquiry: what First Amendment protections are afforded to a private defendant against a private plaintiff, based on making comments allegedly on a matter of public concern. For the purpose of this inquiry, the Court assumes, without deciding, that Defendant's comments surrounding Plaintiff's alleged abuse, and the alleged corruption of public institutions, is speech on a matter of public concern. Thus, in order to survive Defendant's motion to dismiss, Plaintiff must show "that a reasonable person could find the challenged statement alleges or implies a provably false fact." *Williams v. Bean*, No. 16-CV-1633 (VAB), 2017 WL 5179231, at *11 (D. Conn. Nov. 8, 2017) (quoting *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 155 (2d Cir. 2000)). The "determination of truthfulness of a statement is a question of fact for the trier of fact." *Moses v. St. Vincent's Special Needs Ctr., Inc.*, No. 3:17-CV-1936 (SRU), 2021 WL 1123851, at *12 (D.

---

[7] Defendant appears to imply that Plaintiff is a public figure, ECF No. 30-1 at 18 ("public figures cannot avoid constitutional speech protections by pleading defamation as IIED"), but provides no caselaw or other factual support for her proposition.

Conn. Mar. 24, 2021) (quoting *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 851 n.6 (2005)).

The Court begins with the statement that Defendant credits as her own:

> How much more evidence does one need that this is the psychological profile of a man who has sexually abused his children and is continuing to abuse them, aided and abetted by a system that is supposed to protect them?

ECF No. 30-1 at 10.

Plaintiff has denied the veracity of all statements alleging that he is a child abuser, referring to them as "damning falsehoods." ECF No. 1 ¶ 215. Both Plaintiff and Defendant also cite to the same Madison, Connecticut police report for opposing propositions; Plaintiff alleges the ultimate result of the investigation vindicates his version of events, while Defendant claims the report damns them. *See* ECF No. 40 at 25; ECF No. 30-1 at 11. While the report was not included as an attachment to Plaintiff's complaint, his complaint makes repeated reference to it, and his opposition brief relies on it. *See* ECF No. 1 ¶¶ 17, 50. Accordingly, the Court considers the Madison police report here, for the limited purpose of assessing whether it supports Plaintiff's contentions that Defendant's statements, even if made on matters of public concern, were false or reckless.[8]

The report contains clear allegations by Plaintiff's own children of sexual abuse committed by Plaintiff against one of Plaintiff's sons and his daughter. *See* Madison Police Report, ECF No. 30-2 at 43–51. But, critically, the Connecticut Superior Court's opinion awarding Plaintiff custody explicitly states that none of the allegations of "mistreatment," had been "substantiated," even upon consideration of the report that Defendant includes. *Ambrose*, 2022 WL 21749185, at *9. Based on the foregoing, a reasonable person could conclude that Defendant's statements were

---

[8] Certain pages of the report are illegible or nearly illegible. *See* ECF No. 30-2 at 44, 49.

based on or implied false facts about Plaintiff's abuse of his children, in light of the Connecticut Superior Court's conclusion otherwise.

Turning next to Defendant's other statements, as the Court noted above, the vast majority of the statements that Plaintiff attributes to Defendant relate to quotations without a citation to the quotes; cite to an article that was not actually written by Defendant—relying merely on prior documents which she submitted in connection with the state divorce proceedings and thus are arguably subject to absolute privilege[9]; or cite to broken links or pages that the Court cannot access. Nevertheless, Plaintiff has provided at least one concrete example of an article that Defendant herself wrote, the Lee Article.  There, Defendant makes numerous statements about Plaintiff including that he is a "violent abuser-father" and that he exhibits "signs of psychopathy," and she includes a quotation from Plaintiff's daughter that he "sexually [and] emotionally abused" her. Lee Article (last accessed March 31, 2026).  As to the first and third of those allegations, these are also refuted by the Superior Court's divorce and custody decision, and thus a reasonable person could conclude that they allege a false fact.  *See Ambrose*, 2022 WL 21749185, at *9.

As to Defendant's second allegation concerning Plaintiff's alleged psychopathy, there is at least a question as to whether this statement constituted Defendant's pure professional opinion, or whether it was a statement that implied false allegations about Plaintiff that is not appropriate for resolution at the pleadings stage.  *See Qureshi v. St. Barnabas Hosp. Cntr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006) ("Under both New York and federal law, statements of pure opinion are not actionable as defamation"); *see also Moses*, 2021 WL 1123851, at *12 (stating same principle under Connecticut law).  "In distinguishing a statement of fact from mere opinion, the court's task

---

[9] "It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged as long as they are in some way pertinent to the subject of the controversy."  *Gallo v. Barile*, 284 Conn. 459, 465–66 (2007) (cleaned up).

is to determine whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." *Moses*, 2021 WL 1123851, at *12 (quoting *Colon v. Town of W. Hartford*, No. 3:00-CV-168 (AHN), 2001 WL 45464, at *4 (D. Conn. Jan. 5, 2001)). Undertaking this inquiry without the benefit of the evidence developed during discovery would be very difficult. Further, Plaintiff alleges that Defendant never evaluated him in a professional capacity, as she did his ex-wife; thus, it is not clear on what basis Defendant could render this opinion.

For these reasons, the Court cannot find that Defendant's statements are protected by the First Amendment at the pleading stage and moves on to the substantive claims analysis.[10]

### 2. Counts One, Two, and Three: False Light, Defamation & Defamation Per Se

As to Plaintiff's first three counts, the Court must deny Defendant's motion to dismiss, as she does not substantively challenge any of these claims. The entirety of Defendant's briefing to Plaintiff's first three counts is that her claims are protected under the First Amendment. *See* ECF No. 30-1 at 17–18. But, as the Court held above, at the pleadings stage, Plaintiff has shown that a reasonable person could find that Defendant's statements allege a falsehood and were not mere opinions. Accordingly, this defense cannot apply here. Defendant does not *substantively* oppose Plaintiff's first three counts in any other manner. Accordingly, Defendant's motion to dismiss is denied as to Plaintiff's false light, defamation, and defamation *per se* claims.

---

[10] Defendant also conclusively states that her speech qualifies "for protection under Connecticut's anti-SLAPP statute, Conn. Gen. Stat. § 52-196a." ECF No. 30-1 at 5. But, as Defendant provides no legal support for her argument beyond her conclusory assertion, the Court does not address it.

### 3. Count Four: IIED Claim

Next, the Court looks to whether Plaintiff has sufficiently alleged an IIED claim; he has. First, neither party has addressed what state's law should apply in this diversity action for purposes of analyzing Plaintiff's state law claims. Plaintiff cites to Connecticut state law. *See e.g.*, ECF No. 40 at 28. In the absence of opposition or a proposal to apply another state's law, the Court applies Connecticut law for Plaintiff's remaining counts.

An IIED claim requires a plaintiff to establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (internal quotations and citations omitted).

Again, Defendant again has not opposed this claim substantively; rather, she argues that "public figures cannot avoid constitutional speech protections by pleading defamation." ECF No. 30-1 at 18. But, as the Court stated above, Defendant has not provided any support for her assertion that Plaintiff is a public figure, making her argument fail on its face. Further, Defendant cites to *Hustler* (which involved a public figure) in support, but the Second Circuit has clarified that when speech pertains to a matter of public concern, the speaker would be liable only if they made the false statement knowingly, or with a reckless disregard for the truth, "regardless of the claim at issue, be it defamation, intentional infliction of emotional distress, or negligence." *Dongguk Univ.*, 734 F.3d at 129. Accordingly, even if Plaintiff had been a public figure, under Second Circuit precedent he would still be entitled to bring an IIED claim—he would just have to demonstrate that Defendant made the false statement knowingly or with reckless disregard for the truth. For these reasons, Defendant's motion to dismiss is denied as to Plaintiff's IIED claim as well.

       4.   *Conn. Gen. Stat. § 53a-183(a)*

Finally, the Court grants Defendant's motion to dismiss as to Plaintiff's criminal harassment claim. Count Five of Plaintiff's complaint invokes Conn. Gen. Stat. § 53a-183(a), a criminal penal provision. ECF No. 1 at 82–83. It is well settled that "[p]rivate individuals lack standing to assert criminal violations." *Joan T. v. Comm'r of Soc. Sec.*, No. 3:22-CV-1251 (MPS) (MEG), 2023 WL 2600199, at *5 (D. Conn. Mar. 22, 2023) (citing *Coleman-Bey v. Childrens Aid Soc'y*, No. 19-CV-7911 (CM), 2019 WL 5693688, at *2 (S.D.N.Y. Nov. 4, 2019)). Because this count clearly cannot be sustained in Plaintiff's civil suit, Defendant's motion to dismiss is granted as to Count Five.

Accordingly, Defendant's motion to dismiss is denied as to Plaintiff's false light, defamation, defamation *per se,* and IIED claims, but is granted as to Plaintiff's harassment claim in Count Five.

## V.    **DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS**

While Defendant's initial motion to dismiss was pending, she filed a subsequent motion to dismiss pertaining to what she claims are false assertions contained in Plaintiff's motion to proceed *in forma pauperis*, which the Court granted on March 19, 2025. ECF No. 4. Defendant argues that Plaintiff omitted information about income streams and other assets on his financial affidavit that he submitted with his *in forma pauperis* motion, and, accordingly, the Court should dismiss his complaint with prejudice, refer Plaintiff for criminal investigation, and award Defendant attorney's fees. ECF No. 47 at 2–6.[11] The Court requires additional information from Plaintiff before ruling on this motion.

---

[11] Defendant's request for attorney's fees is particularly puzzling, since she is supposedly proceeding in this action *pro se*, without an attorney.

Title 28 U.S.C. § 1915(a) provides that in "any suit, action or proceeding, civil or criminal, or appeal therein," an individual may proceed with the litigation "without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets." "While the text of 28 U.S.C. § 1915(a)(1) appears to only provide for the [IFP] status of prisoner litigators, it is well-established that § 1915(a)(1) affords all natural persons with the opportunity to apply for permission to proceed without prepayment of fees." *Egnatski v. Mortilla,* No. 06-CV-1405 (JS/ARL), 2006 WL 8452994, at \*2 n.2 (E.D.N.Y. July 21, 2006). "If a district court finds that [an individual's] 'allegation of poverty is untrue,' however, then the court is required . . . to dismiss the action." *Vann v. Comm'r of N.Y. City Dep't. of Corr.*, 496 F. App'x 113, 114 (2d Cir. 2012) (summary order) (quoting 28 U.S.C. § 1915(e)(2)(A)); *see also Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir.2002) (if "the allegation of poverty was false, the suit had to be dismissed; the judge had no choice").

Here, Plaintiff admits to having understated the amount he pays in rent, based on what he characterizes as "technical confusion between gross and net rental obligations." Pl's Opp'n to Second Mot. to Dismiss, ECF No. 48 at 3. He also admits that he failed to disclose the balances in his retirement accounts, believing they were "exempt from disclosure." *Id.* at 4. Plaintiff does not address Defendant's allegations that he is receiving business income from royalty checks or that he overstated the amount of support he provides to his two eighteen-year-old children. At the same time, however, Defendant's evidence in support of her motion consists largely of secondhand information, save for the declaration submitted by Plaintiff's daughter.

The Court has determined it needs additional information to assess whether Plaintiff's allegation of poverty was untrue when it was made, such that this case is subject to dismissal under 28 U.S.C. § 1915(e)(2)(A). Accordingly, by **April 14, 2026**, Plaintiff shall file the following

documents provisionally under seal:  (1) copies of the monthly statements covering the month of March 2025, when this action was initiated, for *any* financial accounts under his custody or control at that time, including personal and business checking and savings accounts, retirement accounts, investment or brokerage accounts, or any other relevant financial accounts (and including accounts held at Bank of America and Fidelity, as well as business accounts related to Eyes Above Productions, Inc.); and (2) a copy of his lease, showing the amount he pays monthly for housing.

After receiving this additional information—which may be provisionally filed under seal, to respect Plaintiff's privacy for the time being, until the Court makes a final assessment of the information—the Court will resolve Defendant's supplemental motion to dismiss.  Plaintiff shall comply with the District of Connecticut's Electronic Filing Policies and Procedures (rev. October 3, 2025) even though the documents are being filed under seal provisionally.  In particular, financial accounts and Social Security numbers must be redacted to the last four digits and, to the extent relevant, dates of birth must be redacted to the year.

## VI.    CONCLUSION

For the reasons described herein, Defendant's pending motion to dismiss at ECF No. 30 is GRANTED in part as to Count Five of Plaintiff's complaint and DENIED in all other respects.

By **April 14, 2026,** Plaintiff shall file the documents requested above.  The Court holds the parties' deadline to submit a Rule 26(f) report in abeyance pending receipt of this information.  After reviewing the information, the Court will set a Rule 26(f) report deadline, if necessary.

**SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2026.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

36